UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | | |
|---|---|---|---|
| DONALD G., | | ) | |
| | | ) | |
| | Plaintiff, | ) | |
| | | ) | |
| | v. | ) | No. 3:21-cv-00164-RLY-MPB |
| | | ) | |
| KILOLO KIJAKAZI, | | ) | |
| | | ) | |
| | Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

Donald G. appeals the Social Security Administration ("SSA") denial of his petition for

Supplemental Security Income ("SSI"). United States District Judge Richard L. Young referred

this matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 14). For

the reasons that follow it is recommended that the Commissioner's decision denying Donald G.

benefits be **REVERSED and REMANDED**.

## I.   BACKGROUND

Donald G. applied for SSI on August 28, 2019, alleging disability beginning November

5, 2017. (Docket No. 8-2 at ECF p. 21). His medical history contains records of chest pain and

cardiac conditions, migraine, depression and anxiety, and morbid obesity. His claim was denied

initially, on reconsideration, and on January 11, 2021, after a hearing before the ALJ. (Docket

No. 8-2 at ECF pp. 21-38). After the Appeals Council denied Donald G.'s request for review (*Id.*

*at ECF p. 2*), Donald G. filed the instant litigation.

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. §

416.920(a) and concluded that Donald G. was not disabled. (Docket No. 8-2 at ECF pp. 21-38).

Specifically, the ALJ found that:

- At Step One, Donald G. had not engaged in substantial gainful activity since August 28, 2019, the application date (*Id.* at ECF p. 23).

- At Step Two, Donald G. had "the following severe impairments: degenerative disc disease of the lumbar and cervical spine; palpitations and/or tachycardia; migraine headache disorder; level three obesity; bipolar disorder; borderline personality disorder; and attention deficit hyperactivity disorder (ADHD)[.]" (*Id.*)

- At Step Three, Donald G. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at ECF p. 25).

- After Step Three but before Step Four, Donald G. had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He must work in an environment with a 'moderate noise intensity level' or quieter as the Selected Characteristics of Occupations (SCO) defines that term, which gives examples of light traffic, a grocery store, or a department store. He should avoid concentrated exposure to vibration; thus, he cannot operate heavy machinery or hand held vibratory tools jackhammer. He should work in settings with levels of illumination similar to that found in a typical office setting, but he cannot work in sustained direct sunlight. He can understand and remember instructions without regard to complexity. He can carry out rote or routine instructions that require the exercise of occasional independent judgment or decision-making, but could not do so for complex instructions. He can maintain concentration, persistence, and pace sufficient for work with a variable pace or end-of-day production goals, but not for fast-paced work such as work at a moving conveyor belt. He can tolerate occasional work-related interaction with coworkers and supervisors. He can interact with coworkers and supervisors in a task- or object-oriented setting as opposed to a service-oriented setting. He should have no work related interaction with the public." (*Id.* at ECF pp. 27-28).

- At Step Four, Donald G. had no past relevant work. (*Id.* at ECF p. 36).

- At Step Five, considering Donald G.'s "age [32 years old as of application date], education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform" including material mover by hand (49,800 positions in the national labor market); inspector and sorter (13,000 positions in the national labor market); and a paint coater decorating worker (7,000 positions in the national labor market). (*Id.* at ECF pp. 36-37).

## II.    APPLICABLE LAW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.*

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the Court gives the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 416.920(a)(4)(i)-(v), evaluating in sequence:

> (1) Whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2008). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for Steps One through Four, but shifts to the Commissioner at Step Five. *See Clifford*, 227 F.3d at 868.

When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. ANALYSIS

Donald G. makes three arguments: (1) that the RFC does not account for the off task time that would be required due to his severe migraines; (2) that the ALJ failed to consider the agency-contracted reviewing and examining psychologists' potentially disabling opinions with regards to his ability to concentrate, persist, and pace; and (3) that the finding that he was able to

perform a total of 69,800 jobs in the national economy did not constitute a "significant" number of jobs. The Court addresses each argument in turn.

## A. Migraines

Donald G. argues that while the ALJ acknowledged his "migraine headache disorder" was a severe impairment, the ALJ did not assess a limitation that corresponded to the experience of a migraine, namely the resultant unscheduled time off task and that the record does not support the environmental limitations that the ALJ did include. (Docket No. 14 at ECF pp. 18-22). Donald G. points to his hearing testimony in which he testified to the frequency, duration, and severity of his migraines' effects. He further argues that this testimony is corroborated by medical evidence, including his diagnosis of "chronic migraine without aura, intractable, with status migrainosus" and his multiple Botox injections, which were unsuccessful. (Docket No. 14 at ECF pp. 19-20).

The Commissioner argues that the ALJ sufficiently accommodated for Donald G.'s migraines and explained why limiting him to occasional postural activities, imposing noise restrictions, limiting concentrated exposure to vibrations, precluding work with heavy machinery, and restricting settings with sustained direct sunlight accommodated for Donald G.'s migraines. The Commissioner further argues that Donald G. did not meet his burden of showing that a time-off task limitation was required, instead, she argues, he has only provided a series of assumptions that are not compelling. (Docket No. 17 at ECF pp. 4-8).

Donald G. replies that there is no objective test that can confirm as to the occurrence or severity of a migraine headache. He argues that his unsuccessful Botox injections was objective medical evidence to support his argument that a time-off task is necessary. If the ALJ did not believe he experienced debilitating neurological events, diagnosed by his treating physicians,

then, Donald G. argues, the ALJ should have offered some evidence-based, logical reason for omitting a time-off task limitation. (Docket No. 20 at ECF pp. 1-3).

Because Donald G.'s arguments focus on the ALJ's analysis (or alleged lack thereof) of limitations posed by his migraine headaches, the Court begins with a summary of the evidence on that front. Donald G.'s records in 2013 show a migraine diagnosis. (Docket No. 8-11 at ECF p. 13). In September 2018, he consulted with Dr. Fadheel, at Midwest Neurological P.C. (Docket No. 8-10 at ECF p. 57). At this visit he reported that he has a constant headache in the frontal and occipital area and 2-3/10 severity, and in addition severe migraine headache at a severity of 8-10/10 in the frontotemporal area about 2-3 times a week, lasting about 2-3 days. (*Id.*) Donald G. also reported that he has had constant headaches since childhood. (*Id.*). Dr. Fadheel's diagnosis was—"chronic migraine without aura, intractable, with status migrainosus G43.711 (Primary)." (Docket No. 8-10 at ECF p. 58). Donald G. was prescribed Baclofen tablet at this visit. (*Id.* at ECF p. 59).

In April 2019, Donald G. presented to Nicole R. Stricklen, NP, for a new patient appointment with family medicine. He reported that he has two to three migraines a week and more often under florescent lights. (Docket No. 8-23 at ECF p. 21). He was advised to start a migraine diary. On July 24, 2019, he was admitted to St. Vincent Evansville with complaints of migraine headache and migraine vomiting. (Docket No. 8-30 at ECF p. 30). There, he was treated by Miller Wendi, M.D. and was given medication for the migraine and vomiting intra venously but did not get pain relief. (*Id.* at ECF pp. 35, 40). He was discharged the next day with 10 tablets of promethazine. (*Id.* at ECF p. 41).

In August 2019, he again followed up with Nurse Practitioner Stricklen and reported that his migraines were getting worse, such that he has one almost every day now. (Docket No. 8-23

at ECF p. 13). He reported that his migraines are often different depending on the trigger. (*Id.*). He reports that cold compress with lights out in a dark room helps with symptoms. (*Id.*). He reported that treatment in the past did not make much difference, including beta blockers, sumatriptan, muscle relaxers, gabapentin, and Abilify. (*Id.*). Donald G. again saw Nurse Practitioner Stricklen in October 2019, reporting that he had started Ajovy for migraines in August, but stopped because of the side effects. (Docket No. 8-23 at ECF p. 10). He reported having a migraine during the appointment that had lasted for a few days but that the particular migraine was manageable. (*Id.*).

Later in October 2019, Donald G. followed up with Dr. Fadheel. (Docket No. 8-24 at ECF p. 8). Dr. Fadheel advised Botox injections to treat the migraine. Botox injections were administered on November 15, 2019, and February 21, 2020. (Docket No. 8-28 at ECF pp. 6-7). On February 24, 2020, Donald G. reported to Abbi Sisson, MSW, that he had more pain after the Botox treatments. (Docket No. 8-43 at ECF p. 93). On May 5, 2020, Donald G. reported to Allyson Huett, LCSW that he has had ongoing migraines and "not having much luck with finding effective treatment." (Docket No. 8-43 at ECF p. 113). On July 27, 2020, Donald G. cancelled attending group therapy/counseling due to a migraine headache. (Docket No. 8-43 at ECF p. 132).

As part of his application for SSI, Donald G. reported in October 2019, that his daily activities depended on the state of his migraines and that on some days all he can do is go to the bathroom. (Docket No. 8-8 at ECF p. 39). On other days where he is feeling better, he will cook and try to maintain his apartment with spurts of resting. (*Id.*). He indicates that his ability to pay attention depends on if he has a migraine. (*Id.* at ECF p. 44).

Donald G. testified at his hearing that he has migraine headaches and that he has a headache all the time. (Docket No. 8-3 at ECF p. 25). He clarified that he would have a headache, coming out of migraine, and then have another episode of migraine. (*Id.*). Donald G. testified that he has migraine headaches about three to four times a week. (*Id.*). He testified that they are in different degrees of intensity, lasting different durations, where the most intense sometimes last 2-3 days; and intense one that lasts one to two hours; and a moderate one that lasts up to two days. (*Id.*). Donald G. testified that the migraine headache that is of short duration is the most common. (Docket No. 8-3 at ECF p. 26). He also testified that he had tried injections and medication, but they have not helped. (*Id.*). Donald G. testified that during the less intense headache he can "grit his teeth" and manage to function, but during the more intense ones "any kind of light or sound is agonizing." (*Id.*) Even then, he testified, going to the bathroom is "extremely difficult." (*Id.*). During an intense migraine episode, Donald G. testified that he may not even eat a sandwich he made for himself, and he needs to lie down, use an ice pack, and block out sound and light. (Docket No. 8-3 at ECF p. 27). He testified that if everything remains quiet, the pain subsides in 45 minutes, but even slight noises or disturbances "reconnects that pain, . . . and I have to start the clock over again." (*Id.*). Further, while he does read and play video games, he wears special goggles to avoid straining on his eyes that can cause migraines. (Docket No. 8-3 at ECF p. 33).

The VE testified that being off task 15% or more of the workday would preclude competitive employment. (Docket No. 8-3 at ECF p. 44).

The ALJ's RFC finding did not include a limitation posed by absences or time off task. (Docket No. 8-2 at ECF pp. 27-28). In assessing Donald G.'s migraines, the ALJ found that they were a severe impairment. The ALJ was not entirely persuaded by state agency physicians Dr.

Small's and Dr. Whitley's opinions, who identified no environmental limitations. (Docket No. 8-2 at ECF p. 33). He noted that they considered Donald G.'s subjective reports of migraine pain and the treatment he sought to address it, but did not factor his obesity into their reports. (*Id.*). The ALJ further noted that because light and noise aggravate Donald G.'s head pain, he found appropriate environmental limitations were warranted. (*Id.*).

An RFC represents "the maximum a person can do—despite his limitations—on a regular and continuing basis, which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotation marks omitted). The same can be said for the hypotheticals presented to the vocational expert. *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). In determining an individual's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments . . . and may not dismiss a line of evidence contrary to the ruling." *Villano*, 556 F.3d at 563. An ALJ must provide more than a 'cursory analysis' for rejecting limitations alleged by a claimant. *Id.* That is so because the ALJ must build an "accurate and logical bridge" between the evidence and the result. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

The ALJ did find that Donald G.'s migraines were a severe impairment but how they factored into the RFC is unclear. A "severe impairment," by definition, "significantly limit[ed] [Donald G.'s] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(c). In the RFC, Donald G. was limited to sedentary work with further restrictions for "moderate noise intensity level," concentrated exposure to vibration, and work settings with levels of illumination similar to that found in a typical office setting (i.e., he cannot work in sustained direct sunlight). (Docket No. 8-2 at ECF pp. 27-28). While these limitations were intended to accommodate Donald G.'s migraines, as he indicated in his testimony that he was extremely sensitive to light

9

and sound during such an event, Donald G. did not testify that lights or sounds exclusively caused his migraines, only that he effectively had no tolerance for them during such an event. Moreover, the ALJ did not explain the notion that Donald G.'s avoiding sunlight would prevent the occurrence of a debilitating migraine, but that the sort of lighting common in an office setting would never exacerbate his migraines. Even so, there was no limitation relating to Donald G.'s time off task related to his migraines nor an explanation of why one was necessary. In fact, while the ALJ accurately summarized Donald G.'s testimony regarding the same and his medical records, which showed that medication was largely ineffective, he did not explain the import of either into the limitations that he assigned. *See Denton v. Astrue*, 596 F.3d 419, 423-424 (7th Cir. 2010). *See also Kelli M. v. Saul*, No. 1:20-cv-01731-DLP-JRS, 2021 WL 4236802, at *5 (S.D. Ind. Sept. 17, 2021) ("The ALJ provided an adequate summary of the evidence in the record, but that summarization included no analysis and, thus, failed to provide a logical bridge from the evidence to the ALJ's conclusion.").

The ALJ did not build the required "logical bridge" from the record to the conclusion that his severe migraines would not require a time off task limitation. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). On remand, the ALJ must either account for some migraine-related time of task or sufficiently explain why no limitation is necessary.

**B. Medical Opinion Assessments**

Donald G. argues that the ALJ failed to properly consider the agency's psychological reviewing and examining experts' opinions suggestive of more restrictive social and concentration-related limitations than he assessed and accounted for in assessing his ultimate RFC, and the ALJ failed to garner the necessary evidentiary support to bear his step five burden.

Here, the ALJ concluded that Donald G. had the mental RFC to: (1) understand and remember instructions without regard to complexity; (2) carry out rote or routine instructions requiring the exercise of occasional independent judgment or decision-making but that he could not do so for complex instructions; (3) concentrate, persist, and pace sufficient for work with a variable pace or end-of-day production goals, but not for fast-paced work such as work at a moving conveyor belt; (4) tolerate occasional work-related interaction with coworkers and supervisors; (5) interact with coworkers and supervisors in a task- or object-oriented setting as opposed to a service-oriented setting; and (6) should have no work related interaction with the public. (Docket No. 8-2 at ECF p. 36).

**1. State Agency Psychologists**

Donald G. argues that the ALJ failed to confront the state agency psychologists' potentially disabling opinion "checkbox" limitations. (Docket No. 14 at ECF pp. 24-26). On the other hand, the Commissioner argues that the ALJ appropriately relied on the doctors' narrative opinions because they adequately translated the moderate checkbox ratings. (Docket No. 17 at ECF pp. 9-11). Donald G. disagrees, arguing that the doctors' narratives did not make an explicit finding about Donald G.'s ability to maintain his concentration over a specific period of time or "consistent pace." (Docket No. 20 at ECF p. 5).

In December 2019, state-agency psychologist Kari Kennedy, Psy. D. reviewed the record, including the consultative examination, discussed next, and found that Donald G. had moderate limitations in the area of maintaining attention and concentration for sufficient periods and in the area of maintaining socially appropriate behavior and adhering to the basic standards of neatness and cleanliness (Docket No. 8-4 at ECF p. 13). As relevant to this appeal, the state agency psychologists' opinions concerning Donald G.'s mental RFC are comprised of two sections: (1)

the so-called "checkbox" section in which the psychologists answer a series of questions about whether and, if so, to what degree Donald G. is limited as to certain functionalities; and (2) a "narrative" section in which the psychologists translate the checkbox limitations into functional limitations.

Relevant on appeal, in response to checkbox questions, Dr. Kennedy opined that Donald G. was "moderately limited" in the following two categories: (1) "maintain attention and concentration for extended periods" and "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (Docket No. 8-4 at ECF p. 13). In the narrative section, Dr. Kennedy opined as follows:

> The evidence suggests that claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can relate on a superficial and ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

(Docket No. 8-4 at ECF p. 14). On reconsideration, state-agency psychologist Randal Horton, Psy. D. affirmed Dr. Kennedy's findings.

The ALJ found that the opinions of the state-agency psychologists were consistent with and supported by the record as a whole, with two exceptions, namely that in line with Dr. Cole's opinion, Donald G. should have no work-related interaction with the public and that he should be limited to work that can be done with some variations in attention. (Docket No. 8-2 at ECF p. 36).

The Seventh Circuit has had occasion to address checkbox limitations and narrative explanations. In *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), a state agency consultant had opined in the checkbox questions that the claimant was moderately limited in six areas, but in his accompanying narrative, the consultant simply stated that the claimant retained the capacity for

unskilled work. *Id.* at 857-858. The Seventh Circuit held that it was error for the ALJ to simply rely on the narrative and not account for the moderate checkbox limitations because the narrative did not adequately capture the checkbox limitations. *Id.* at 858-59. In *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), the Seventh Circuit held that the checkbox "[w]orksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes where that narrative adequately encapsulates and translates those worksheet observations." *Id.* at 816. More recently, in *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019), the Seventh Circuit held that while an "ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in checkbox sections." *Id.* at 676.

Here, Dr. Kennedy and Dr. Horton found Donald G. had no significant limitations in 10 functional areas and had moderate limitations in the 3 functional areas of maintaining attention and concentration for extended periods, interacting with the public,[1] and maintaining socially appropriate behavior and adhering to the basic standards of neatness and cleanliness. (Docket No. 8-4 at ECF pp. 13, 28). The state-agency psychologists then provided the following narrative:

> The evidence suggests that the claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can relate on a superficial and ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

(Docket No. 8-2 at ECF p. 36; Docket No. 8-4 at ECF pp. 14, 29).

---

[1] The ALJ's RFC precludes work-related interaction with the public (Docket No. 8-2 at ECF p. 28).

While the ALJ found the state-agency psychologists' opinions were "consistent with and supported by the record," the ALJ did not address these checkbox limitations at all in his opinion. The question then becomes whether the state-agency psychologists' narratives adequately encapsulate the moderate checkbox findings.

This case is similar to *DeCamp*, in which the ALJ omitted any discussion or confrontation of the state-agency psychologist's checkbox limitations with regard to concentration-related and social impairments in both his decision and in presenting hypothetical questions to the vocational expert. 916 F.3d 671, 676 (7th Cir. 2019). In that case, the state-agency psychologist that the ALJ relied on indicated the plaintiff had "moderate" limitations in four checkbox areas: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace. *Id.* at 675. The corresponding narrative indicated that plaintiff was "capable of withstanding the demands of unskilled as defined by SSA." *Id.* at 673. The ALJ's RFC, in relevant respect, limited the plaintiff to "'unskilled work with an SVP of 2 or less, with no fast-paced production line or tandem tasks, at a job that allows her to be off task up to 10% of the workday.'" *Id.* at 675.

The Seventh Circuit remanded the ALJ's decision holding "that the ALJ erred by not including DeCamp's 'moderate' limitations in concentration, persistence, and pace in the hypothetical to the vocational expert." *Id.* The Seventh Circuit found the analysis flawed because limitations to "unskilled work" with no "fast-paced production line or tandem tasks" are not a proxy for including a moderate limitation as to concentration, persistence, and pace. *DeCamp,*

916 F.3d at 676 (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *O'Connor-Spinner*, 832 F.3d at 698). Finally, the Seventh Circuit rejected the Commissioner's argument that the ALJ accounted for DeCamp's limitations in her RFC by relying on the narrative explanations offered by the state-agency psychologists. *Id.* at 676.

Moreover, here, while the ALJ purported to be persuaded by their findings of "moderate limitations" to Donald G.'s ability to "interact with others" and to "concentrate, persist or maintain pace," the ALJ offered no discussion of whether he found the reviewing psychologists' narrative opinions to encapsulate the aforementioned "checkbox" limitations, which suggest some lapses in concentration over extended periods of time and some exhibition of intolerable social behaviors. (Docket No. 8-2 at ECF p. 26; Docket No. 8-4 at ECF pp. 13, 28-29). And one could argue in *DeCamp*, the narrative opinions came closer to encapsulating the checkbox opinions than the narrative opinions in Donald G.'s case. There, the reviewing psychologists' narrative opinions were that the claimant "may have some difficulty with concentration and persistence at times but she is able to meet the demands of basic unskilled work." 916 F.3d at 673. The ALJ interpreted the agency psychologists' opinions to mean that the plaintiff could sustain concentration continuously so long as the substance of the work was "unskilled," a logical leap which the Seventh Circuit rejected. *Id.* Here, the narrative was merely that Donald G. could "understand, remember, and carry out detailed, but not complex tasks . . . and attend to tasks for a sufficient period to complete tasks." (Docket No. 8-4 at ECF pp. 14, 29). Unlike the *DeCamp* narrative this narrative does provide insight as to ability to meet employer demands of uninterrupted completion of tasks.

Donald G. distinguishes this case from the Seventh Circuit cases relied on by the Commissioner. In *Pavlicek v. Saul*, 994 F.3d 777, 793 (7th Cir. 2021), the court explained that an

ALJ may rely on a consultant's narrative assessment if the limitations that the narrative describes are consistent with the consultant's ratings—appearing in "the checklist portion of the [same] form"—of the various functions contained in the broad paragraph B domains. The court also explained that moderate limitation is defined by regulation for claims filed on or after January 17, 2017—like Donald G.'s—to mean that functioning in that area on a sustained basis is fair. *Id.* at 783 (citing 20 C.F.R. § Pt. 404, Subpt. P., App. 1, 12.00(F)(2)(c)). The court reasoned that "'fair' in ordinary usage does not mean 'bad' or 'inadequate.'" *Pavlicek*, 994 F.3d at 783.

Donald G. disagrees with the Commissioner on the importance of *Pavlicek*'s discussion regarding the meaning of "moderate." However, perhaps more significant to this case, in *Pavlicek* the state-agency reviewing psychologists made clear in their narrative assessment they believed that if the claimant were limited to "simple, routine tasks," they could maintain the attention necessary to complete those tasks for two-hour periods "at a consistent pace." *Id.* at 780. This narrative assessment clearly encapsulated the checkbox limitations when they explicitly found that the plaintiff could maintain attention and concentration for two-hour periods, at a consistent pace, over the course of an eight-hour workday, so long as tasks were "simple, routine." *Id.* Here, the narrative contained no explicit finding about Donald G.'s ability to maintain his concentration over a specific period of time was made. (Docket No. 8-4 at ECF pp. 14, 29). Rather, the state-agency psychologists merely concluded Donald G. could "attend to tasks for a sufficient period to complete tasks," not that his concentration would never be disrupted to the extent he would be taken of task while performing "detailed" work tasks.

Moreover, this case is distinguishable from the cases relied upon by the Commissioner. As Donald G. argues, in *Pytlewski v. Saul* the Seventh Circuit affirmed the ALJ's decision to rely on the state-agency psychologists' functional capacity opinions when the checkboxes were

'consistent with [the state-agency psychologists'] narratives." 791 F. App'x 611, 616-17 (7th Cir. 2019). But, in that case, the ALJ explicitly considered both the "checkbox limitations" and the state-agency psychologists' narratives, which explicitly concluded that the claimant could "maintain attention for two hours at a time and persist at simple tasks over eight-and forty-hour periods with normal supervision." *Id.* at 615. In *Burmester v. Berryhill*, the Seventh Circuit said "[t]here was no other finding [other than the narrative] in the [physician's] report that Burmester was unable to concentrate on work, unlike in *DeCamp*[.]" 920 F.3d 507, 511 (7th Cir. 2019). The Court further distinguished it from *DeCamp* in noting that in Burmester's case "there was no such checkbox indicating a moderate limitation." *Id.* at 512.

Likewise, in *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) six state-agency psychologists evaluated the claimant, and three of them assessed moderate limitations in concentration, persistence, and pace. But in their narratives, those psychologists explicitly translated their checkbox findings. One doctor wrote: "[Peeters] is capable of carrying out simple, 2-3 step instructions and maintaining attention and concentration when doing so." *Peeters v. Berryhill*, No. 18-cv-738, 2019 WL 2289632, at *5 (E.D. Wis. May 28, 2019). Another stated: "The longitudinal evidence of record does not indicate marked ongoing limitations in [concentration and persistence]." *Id.* at *6. The third provided: "[Peeters] is able to sustain attention for simple, repetitive tasks for extended periods of two hour segments over the course of routine workday/workweek within acceptable attention, concentration, persistence and pace tolerances." *Id.* These narratives expressly incorporated the assessed limitations in concentration, persistence, and pace; and, thus the Seventh Circuit held that the ALJ did not err in incorporating those narrative explanations over the checkbox findings. *Peeters*, 975 F.3d at 642.

The ALJ could have articulated why he did not find a time-off-task limitation was appropriate (and he may well have good reasons for not including this limitation), but the ALJ did not do so. The problem here is that the state psychologists' narratives are inconsistent, or at minimum fail to address, the checkbox moderate limitation for moderate limitations in ability to maintain attention and concentration for extended periods. The state agency psychologists are not vocational experts and were not making a judgment about how long one must sustain concentration to complete a "detailed" task, rather only concluding that Donald G. retained the cognitive capability to understand and complete a detailed instruction in some amount of time, on some basis. The narratives do not explicitly state that Donald G. could sustain concentration normally within a workday or workweek, unlike many of the cases cited by the Commissioner.

Therefore, remand is appropriate so that the ALJ can reconsider Dr. Kennedy's and Dr. Horton's checkbox limitations. On remand, the ALJ should consider whether the checkbox limitations are consistent with the state agency consultants' narratives and if inconsistent, either include the limitations in the RFC and hypotheticals or explain the reasoning for excluding the checkbox limitations.

## 2. Consultative Examiner

Next, Donald G. argues that the ALJ did not accommodate for the consultative examiner Floyd Cole Ph. D.'s opinion that Donald G. would have periods of time "in which he would have difficulty completing tasks." (Docket No. 14 at ECF pp. 26-28). The Commissioner replies that the ALJ expressly articulated that Dr. Cole's observation was supported by the clinical observations and accounted for the same by including in the RFC that Donald G. was limited to work that can be done with some variations in attention. (Docket No. 17 at ECF pp. 12-13). On reply, Donald G. argues that this limitation is inadequate because it is not commensurate with an

opinion that Donald G. would experience periods of time in which he would not adequately complete his work tasks due to concentration issues. (Docket No. 20 at ECF pp. 9-10).

Dr. Cole opined that Donald G. (1) did not exhibit any significant intelligence deficits that would prohibit him from gaining and maintaining employment; (2) likely had intelligence in the average range; (3) appears to have no significant impairments in memory or thought processes and evidenced no difficulties with mathematical calculation skills and school-based knowledge tasks; but (4) does present with mental health issues that are likely to impact his employment making it difficult to adapt to stressful situations and "could have periods of time in which he would have difficulty adequately completing tasks." (Docket No. 8-24 at ECF pp. 15-16).

The ALJ was "somewhat persuaded" by Dr. Cole's report and, in relevant part, found that Dr. Cole's observation that Donald G. would have difficulty adequately completing tasks is supported by clinical observations and evidence contained in the record. (Docket No. 8-2 at ECF p. 36). "[R]elying on Dr. Cole, the [ALJ] [found] that the claimant should be limited work that can be done with some variations in attention." (Docket No. 8-2 at ECF p. 36). While the ALJ did not explain how he specifically accounted for "variations in attention" in the RFC, he did include a limitation in his hypotheticals to the vocational examiner and his RFC limiting Donald G. to "variable pace or end-of-day production goals," but not "fast-paced work such as work at a moving conveyor belt." (Docket No. 8-2 at ECF p. 28; Docket No. 8-3 at ECF p. 40).

The ALJ's statement that "Dr. Cole's observation that the claimant would have difficulty adequately completing tasks is supported by his clinical observations and evidence contain in the record" indicates that the ALJ intended to adopt Dr. Cole's opinion. Moreover, the ALJ indicates that he accounted for this opinion by limiting Donald G. to work that can be done with "some

variations in attention." (Docket No. 8-2 at ECF p. 36). The parties dedicate a good portion of their briefing to whether "variations in attention" adequately accounts for Dr. Cole's opinion, which the ALJ found to be supported by the record. The Court agrees with Donald G. that a logical implication of Dr. Cole's opinion is that there would be times he completed tasks inadequately. In other words, Dr. Cole's opinion also appears to be related to time off task or ability to persist. The parties' focus on the "variations in attention" language runs a bit askew of the Court's focus on review because the ALJ's ultimate hypotheticals and RFC do not use this exact language, instead finding that Donald G. "can maintain concentration, persistence, and pace sufficient for work with a variable pace or end-of-day production goals, but not for fast-paced work such as work at a moving conveyor belt." (Docket No. 8-2 at ECF p. 28; Docket No. 8-3 at ECF p. 40). Yet, as *DeCamp* noted, the Seventh Circuit has previously held that "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for include a moderate limitation on concentration, persistence, and pace." 916 F.3d at 675-76. Likewise, there is no indication this limitation accounted for Dr. Cole's opinion that Donald G. could have difficulty adequately completing tasks. Remand is also required on this issue.

## C. Significant Jobs

Because remand is required on steps one and two and will necessarily affect the Step five analysis, the Court only provides a brief overview as to this final argument. Donald G. argues that the ALJ's conclusion that 69,800 jobs in the national economy constituted a "significant" number of jobs should be rejected by this Court, as it is not consistent with the conclusions of other courts within this Circuit, agency regulations, or any plain meaning of the term "significant." Donald G. acknowledges, at the time of the briefing, the Seventh Circuit had never

formally addressed what constitutes a "significant" number of jobs in the national economy, but he instead points to other district courts in this Circuit that had found numbers similar to those in this case insignificant. He further argues that the ALJ failed to explore regional job numbers with the vocational expert. (Docket No. 14 at ECF pp. 28-33). The Commissioner responds that 69,800 jobs is well within the range that courts in this Circuit have found sufficiently significant at Step five. (Docket No. 17 at ECF pp. 13-14). Donald G. replies that a number of the cases the Commissioner cites relied on "regional" job numbers, not national, and that some Seventh Circuit decisions likewise made the unintentional misunderstanding of relying on cases involving regional numbers to assess the significance of cases involving national numbers. (Docket No. 20 at ECF pp. 10-13). Moreover, Donald G. argues that that the ALJ failed to develop any evidence as to regional job numbers.

After the parties' briefs were complete, the Seventh Circuit issued *Milhem v. Kijakazi*, 52 F.4th 688 (7th Cir. 2022). In that case the vocational expert testified that there were 89,000 jobs in the national economy that the plaintiff could perform, which, based on that testimony and "considering [plaintiff's] age, education, work experience, and residual functional capacity," the ALJ found at step five that there were a significant number of jobs that the plaintiff could perform. *Id.* at 692. Milhem appealed to the district court and then the Seventh Circuit, where she presented three arguments as to why the step-five determination was flawed: (1) that there must be a regulation defining how many jobs are "significant" for a step-five determination to be made; (2) even if "significant" can be defined by adjudication, neither the ALJ nor the Commissioner presented a standard by which significance can be assessed; and (3) 89,000 jobs in the national economy is not a significant number of jobs. *Id.* at 693.

The Seventh Circuit found that Milhem waived the first argument by failing to present it to the district court. *Id.* With regards to Milhem's second argument seeking a standard for significance, the Seventh Circuit rejected the argument finding that no statutory and regulatory framework contained such a requirement. *Id.* at 694-695. Moreover, such a standard would not be in accord with the Supreme Court's approach to categorical rules in Social Security hearings. *Id.* Notably, the Seventh Circuit recognized in *Biestek v. Berryhill*, "the [Supreme] Court rejected an argument that would have established a categorical rule that substantial evidence could not be shown whenever a vocational expert refuses a request for data underlying her job estimates." *Id.* (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019)).

Finally, the Seventh Circuit addressed Milhem's third argument as to whether the 89,000, national jobs constituted a significant number in her case. *Milhem*, 52 F.4th at 695. The Seventh Circuit acknowledged that the Seventh Circuit's case law addressing what constitutes a "significant" number of jobs has sometimes conflated regional versus national jobs and instructed future reviewing courts to "be attentive to the difference between regional and national job numbers in this discussion." *Id.* (collecting cases). Nonetheless, the Seventh Circuit found sufficient evidence supported the ALJ's step-five decision on the instant record. *Id.* It noted that the VE provided the ALJ with plenty of evidence that Milhem could perform 89,000 jobs; that the ALJ grounded her conclusion that the number of jobs was "significant" on her consideration of Milhem's "age, education, work experience, and residual functional capacity" and that Milhem was "capable of making a successful adjustment to other work that exists" in the economy. *Id.* On the record, the Seventh Circuit concluded that a reasonable person would accept 89,000 jobs in the national economy as being a significant number. Finally, the Seventh Circuit noted that the number was in line with previous Seventh Circuit precedent and other circuit's precedents. *Id.*

(citing *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (140,000 representative jobs in the national economy was "well above the threshold for significance.")) and (collecting cases from the Sixth, Ninth, and Eighth Circuits finding 10,000 to 32,000 jobs, nationally, significant).

On remand this guidance from *Milhelm* should be taken into consideration.

## IV. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the court **REVERSE and REMAND** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 16th day of February, 2023.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.